UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
TERRELL K. BROCK, :
              Plaintiff, :
 :
v. :
 :
CVS CORPORATION; ASHLEY CAMACHO, :
CVS Employee; LEONARDO CORONADO, : **OPINION AND ORDER**
CVS Manager; CITY OF WHITE PLAINS; P.O. :
JOSE LUIS FORMOSO; P.O. C. BROWNING; : 22 CV 4014 (VB)
P.O. SCHNEIDER; P.O. BEALL; P.O. LEVITO; :
P.O. GLYNN; P.O. DIPATERIO; P.O. :
HORGAN; and P.O. VANDERWALKER, :
 :
              Defendants. :
 :
--------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Terrell Brock, proceeding pro se and in forma pauperis, brings this Section 1983 action against defendants CVS Corporation, CVS manager Leonardo Coronado, CVS employee Ashley Camacho (together, the "CVS Defendants"), as well as several City of White Plains police officers (the "Officer Defendants") and the City of White Plains (together, the "White Plains Defendants"). Liberally construed, plaintiff's fourth amended complaint (the "FAC") asserts claims for false arrest, false imprisonment, and failure to intervene, under the Fourth and Fourteenth Amendments and New York state law. (Doc. #60).

       Now pending are the CVS Defendants' and the White Plains Defendants' motions for summary judgment. (Docs. ##113, 116, 118, 119).[1] Plaintiff did not oppose the motions, despite having been granted extensions of time to do so. (Docs. ##115, 126).

---

[1] The CVS Defendants initially moved to dismiss the FAC under Rules 12(b)(1) and 12(b)(6). However, the Court, in an exercise of its discretion, converted the motion to one for summary judgment pursuant to Rule 56. (Doc. #115).

1

For the reasons set forth below, the motions are GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

Defendants have submitted memoranda of law, statements of undisputed material facts pursuant to Local Civil Rule 56.1,[2] and supporting declarations and exhibits, which together reflect the following factual background.

This case arises from plaintiff's arrests for criminal mischief and petit larceny on April 3 and April 13, 2020, respectively.

I.      April 3 Arrest

On April 3, 2020, defendants Browning and Beall, both White Plains police officers, responded to a report that an individual wearing a gray sweat suit had broken the window of an apartment located at 23 Mitchell Place in White Plains, New York.  (Doc. #129-1 at ECF 1, 3).[3] Police records indicate that when the officers arrived at the apartment, they encountered a man

---

[2]     Because plaintiff did not submit a counterstatement pursuant to Local Civil Rule 56.1(b), the Court may deem the facts in defendants' Rule 56.1 statements to be undisputed.  See Local Civil Rule 56.1(c).  Nonetheless, plaintiff is proceeding pro se and has failed to oppose the motion, so the Court must be "satisfied that the facts as to which there is no genuine dispute show that the moving party is entitled to summary judgment as a matter of law."  Jackson v. Jackson, 2021 WL 981849, at *4 (S.D.N.Y. Mar. 16, 2021).  Accordingly, the Court has independently reviewed the factual record with respect to each of defendants' statements of material undisputed fact.

Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

Plaintiff will be provided copies of all unpublished cases cited in this Opinion.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

[3]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

2

named John Stewart.[4]  Stewart reported that an individual he knew only as "Brock" had stayed in the apartment the previous night.  (Id.).  Stewart told the officers that when he asked Brock to leave in the morning, Brock became upset, left the apartment, and threw a rock through the living room window.  Based on Stewart's description of the individual, Beall and Browning received photos from nearby surveillance cameras.  Stewart viewed the photos and confirmed the man depicted was the same Brock who had stayed at the apartment the previous night.  The officers canvassed the nearby area, located plaintiff on foot, and confirmed his identity.  The officers also photographed Stewart's broken window, and Stewart provided a sworn statement.

Plaintiff was arrested and charged with criminal mischief in the fourth degree in violation of N.Y. Penal Law § 145.  Beall and Browning processed plaintiff on the scene, issued him a Desk Appearance Ticket ("DAT"), and released him on his own recognizance after approximately fifteen to twenty minutes.

Plaintiff concedes he spent the night of April 2, 2020, at Stewart's home, and that Stewart asked him to leave the following morning, April 3.  However, plaintiff denies having been upset with Stewart or throwing a rock through his window.  (Doc. #113-3 ("Pl. Dep.") Tr. at 49–52).[5]

---

[4]      The bulk of evidence submitted in support of the instant motions is comprised of police reports and similar investigatory records.  Although these records could themselves be admitted at trial under a hearsay exception, see Fed. R. Evid. 803(6), (8), any third-party statements contained therein would be inadmissible hearsay if offered for their truth, see Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2d Cir. 1991).  Nevertheless, the Court may and does consider third-party statements in the police records to the extent they are offered, not for their truth, but to prove the Officer Defendants had probable cause for the arrests at issue.  See, e.g., Tuccio v. Papstein, 307 F. App'x 545, 546–47 (2d Cir. 2009) (summary order).  Otherwise, the Court considers only those entries in the police records which are based on a reporting officer's knowledge or observations to be evidence of the actual events described.  Parsons v. Honeywell, 929 F.2d at 907.

[5]      Citations to "Tr. at __" refer to the page numbers at the top right-hand corner of each transcript page.

II. <u>April 13 Arrest</u>

Ten days later, on April 13, 2020, defendant Vanderwalker, a White Plains police officer, responded to a reported theft at a ShopRite store located at 13 City Place in White Plains. When Vanderwalker arrived at approximately 11:45 a.m., a ShopRite employee named Adonis Fuente informed Vanderwalker that he had seen an individual take several items from the store and attempt to leave without paying for the merchandise. (Doc. #129-4 at ECF 1–3). Fuentes said he recognized the individual, "now identified as Terrell Brock," from a previous theft. (<u>Id</u>. at ECF 3). Fuentes reported that he had confronted the shoplifter, who "displayed a closed pocket knife and left on foot towards the parking structure." (<u>Id</u>.). Fuentes provided video footage of the incident and made a sworn statement. Based on this information, Vanderwalker relayed "through headquarters" a description of the suspect "as a black male wearing a black jacket and a red, white and blue knit hat." (<u>Id</u>.).

At approximately 1:00 p.m. that same day, officers, including defendants Horgan, Dipaterio, and Levito, were investigating an unrelated incident at a nearby CVS store. While outside the CVS located at 24 Mamaroneck Avenue in White Plains, Horgan observed an individual "known to [him] as Terrell Brock" exit the store. (Doc. #129-5 at ECF 3). Apparently aware plaintiff was suspected of the ShopRite theft from earlier that day, the officers detained plaintiff in a police vehicle.

While plaintiff was detained, defendant Coronado exited the CVS and informed the officers that a male with a "red and blue knit cap" had just taken merchandise from the store without paying. (Doc. #129-5 at ECF 3). Coronado saw plaintiff in the police vehicle and identified him as the alleged shoplifter. In a sworn statement, Coronado indicated that defendant Camacho, another CVS employee, had observed plaintiff take merchandise from the store.

Coronado also provided officers with video footage of plaintiff removing items from a shelf, placing them in a reusable shopping bag, and exiting without attempting to pay.

The officers arrested plaintiff and eventually charged him with two counts of petit larceny in violation of N.Y. Penal Law § 155.25, for both the ShopRite and CVS incidents. Plaintiff was again processed on the scene, issued DATs, and released on his own recognizance.

III.     Subsequent Arrests and Plea

Between April and November 2020, plaintiff was arrested several more times, including on grand larceny charges. After being arrested on November 28, 2020, for an unrelated petit larceny, plaintiff was detained at Westchester County Correctional Facility in Valhalla, New York. According to plaintiff, bail was set on all of his then-open cases, including those stemming from the April 3 and April 13 arrests.

While plaintiff was in custody, he was tried on the April 3 criminal mischief charge.[6] Then, in August 2021, the April 13 petit larceny charges were dismissed in consideration of plaintiff's guilty plea to the unrelated pending charges. Plaintiff was transferred to Orleans Correctional Facility in Albion, New York, where he served a two and a half–year sentence.

**DISCUSSION**

I.     Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material

---

[6] The White Plains Defendants assert that plaintiff's criminal mischief charge from April 3 was "dismissed at trial due to an uncooperative witness." (Doc. #116 at 9). But the evidence cited—plaintiff's deposition transcript—only indicates a trial was held, not that the case was dismissed. However, because plaintiff's April 3 arrest was supported by probable cause, the resolution of the criminal charges is ultimately immaterial.

5

fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 322–23. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown ex rel. Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). "The mere existence of a scintilla of evidence in support" of the non-moving party's position is likewise insufficient; "there must be evidence on which the jury could reasonably find for" the non-moving party. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v.

CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor, on the issue on which summary judgment is sought, summary judgment is improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

The Court need consider only evidence that would be admissible at trial.  Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).  Bald assertions, unsupported by admissible evidence, are thus not sufficient to overcome summary judgment.

Although courts must afford a pro se litigant special solicitude on a motion for summary judgment, such solicitude "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment."  Jorgensen v. Epic/Sony Recs., 351 F.3d 46, 50 (2d Cir. 2003).

II.     Section 1983 False Arrest and False Imprisonment Claims

Liberally construed, the FAC pleads Fourth and Fourteenth Amendment claims for false arrest and false imprisonment.  The Court addresses these claims as to each group of defendants in turn.

   A.     Officer Defendants:  Probable Cause

The Officer Defendants argue they are entitled to summary judgment on plaintiff's false arrest and false imprisonment claims because the undisputed facts show that probable cause existed for plaintiff's arrests.

The Court agrees.

      1.     Legal Standard

Section 1983 claims for false arrest and false imprisonment are analyzed under the law of the state where the arrest or imprisonment occurred.  See Jaegly v. Couch, 439 F.3d 149, 151 (2d

Cir. 2006).  Under New York law, the torts of false arrest and false imprisonment are synonymous.  Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991).  Thus, to succeed on a claim for false arrest under Section 1983 or New York law, a plaintiff must demonstrate:  "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  Hernandez v. United States, 939 F.3d 191, 199 (2d Cir. 2019).

A confinement by police officers is "otherwise privileged" when it is supported by probable cause.  Morris v. Silvestre, 604 F. App'x 22, 24 (2d Cir. 2015) (summary order).  Thus, the existence of probable cause is an absolute defense to a Section 1983 claim of false arrest or false imprisonment.  Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014).

An officer has probable cause to arrest when he or she has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  Probable cause may be based on mistaken information, "so long as the arresting officer acted reasonably and in good faith in relying on that information."  Bernard v. United States, 25 F.3d 98, 102 (2d Cir.1994).  Courts evaluating probable cause consider the facts available to the arresting officer at the time of the arrest.  See Jaegly v. Couch, 439 F.3d at 153.  When the relevant facts are not disputed, "the existence of probable cause is a question of law for the court."  Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007).

        2.     Analysis

As set forth below, the undisputed facts demonstrate the Officer Defendants had probable cause to arrest plaintiff on both April 3 and April 13, 2020.

a. <u>April 3 Arrest</u>

It is well-established a police officer has probable cause to arrest based on information received from "the putative victim or eyewitness . . . unless the circumstances raise doubt as to the person's veracity." <u>Panetta v. Crowley</u>, 460 F.3d 388, 395 (2d Cir. 2006). Particularly when the information supplied "is corroborated in material respects by independent evidence," an officer generally is entitled to rely on the witness's account. See <u>United States v. Wagner</u>, 989 F.2d 69, 72–73 (2d Cir. 1993).

Here, Officers Browning and Beall had probable cause to arrest plaintiff for criminal mischief on April 3. The undisputed facts demonstrate that, upon arrival at the scene, the officers received a statement from Stewart, who was both the victim and the eyewitness. Stewart's statement (which was later sworn) was independently corroborated by his identification of plaintiff in surveillance footage from nearby cameras, plaintiff's presence in the apartment's vicinity shortly after the alleged incident, and the physical damage to Stewart's window. Moreover, there are no facts or evidence in the record which suggest Browning and Beall should have doubted Stewart's credibility or the accuracy of his report. See <u>Martinez v. Golding</u>, 499 F. Supp. 2d 561, 567–68 (S.D.N.Y. 2007) (finding probable cause when there was "no apparent reason to disbelieve" the witness) (collecting cases). Although when questioned, plaintiff denied breaking Stewart's window, "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." <u>Panetta v. Crowley</u>, 460 F.3d at 395–96. Under the totality of the circumstances and based on the undisputed facts, no reasonable juror could find the officers lacked probable cause for plaintiff's April 3 arrest.

b.     April 13 Arrest

On April 13, 2020, plaintiff was charged with two separate counts of petit larceny for stealing from ShopRite and CVS, respectively.

Officer Vanderwalker's case report states that at approximately 11:45 a.m., police responded to a report that an individual had taken several items from a ShopRite store and attempted to leave without paying. (Doc. #129-4 at ECF 1, 3). When Vanderwalker arrived at the store, Fuentes, an eyewitness, gave a description of the shoplifter—including his distinctive clothing—and reported that the individual had left on foot in the direction of the parking structure. (Id. at ECF 3). Fuentes also provided a sworn statement and video footage of the incident. Vanderwalker relayed Fuentes's description of the suspect "through headquarters." (Id.). As with Stewart, the record reveals no reason for Vanderwalker to have doubted the veracity or accuracy of Fuentes's report, and plaintiff has not disputed the substance of Vanderwalker's narrative. To the contrary, at his deposition, plaintiff conceded he did steal from ShopRite on April 13, 2020. (Pl. Dep. Tr. at 38).

Thus, according to the undisputed facts, when Horgan and his fellow officers responded to the CVS at 24 Mamaroneck Avenue, they were aware a male wearing a black jacket and a red, white, and blue knit cap was wanted for petit larceny at a ShopRite in very close proximity.[7] When these officers saw plaintiff—who fit the description of the suspect and was wearing the same distinctive clothing—on foot in the area soon after the alleged ShopRite larceny, they had probable cause to detain and arrest him. See, e.g., Stansbury v. Wertman, 721 F.3d 84, 93–94 (2d Cir. 2013) (finding probable cause to arrest a woman identified by the victims as the

---

[7]     Plaintiff testified, and the Court takes judicial notice, that the CVS and ShopRite stores are in fact located across the street from one another. (Pl. Dep. Tr. at 38).

shoplifter in question and who had used her credit card nearby shortly before the alleged theft); United States v. Patterson, 25 F.4th 123, 137–40 (2d Cir. 2022) (finding probable cause for an investigatory stop when an uncommon vehicle matching the dispatcher's description was seen driving near the location of an alleged crime).

Moreover, because the officers had probable cause to arrest plaintiff for the ShopRite theft, it is immaterial whether probable cause would have separately supported plaintiff's arrest for the CVS larceny standing alone. "[C]ompensable damages in a successful false arrest claim stem from injuries associated with the detention itself, not the individual charges." Guan v. City of New York, 37 F.4th 797, 805 (2d Cir. 2022). And an officer's "subjective reason for making the arrest" is "irrelevant to the existence of probable cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004). Thus, a claim of false arrest or false imprisonment turns "on the validity of the arrest, and not on the validity of each charge." Jaegly v. Couch, 439 F.3d at 154.

Accordingly, any false arrest claim arising from the CVS incident fails as a matter of law because the undisputed facts demonstrate the officers had probable cause to arrest plaintiff based on the ShopRite incident.[8] See Guan v. City of New York, 37 F.4th at 805 ("In general, a

---

[8] The White Plains Defendants also argue plaintiff's false arrest and false imprisonment claims associated with the April 13 arrest fail because plaintiff pleaded guilty to the April 13 petit larceny charges. To be sure, a plaintiff generally may not maintain a false arrest claim when he has pleaded guilty to the offense for which he was arrested, or to a lesser offense pursuant to a plea agreement. Timmins v. Toto, 91 F. App'x 165, 166 (2d Cir. 2004) (summary order). However, the record does not establish that plaintiff pleaded guilty to the April 13 charges. Rather, plaintiff testified at his deposition that the April 13 petit larceny charges were dismissed as "covered" by plaintiff's guilty plea to unrelated, separate charges arising from distinct arrests. (Pl. Dep. Tr. at 64, 66). The Second Circuit has never addressed whether, by pleading guilty to charges arising from a specific arrest, an individual concedes that probable cause existed for a different, unrelated arrest. See John v. Lewis, 2017 WL 1208428, at *10–14 (E.D.N.Y. Mar. 31, 2017) (surveying case law on this question). Because the undisputed facts demonstrate probable cause supported the April 13 arrest, the Court declines to weigh in on this matter.

11

plaintiff cannot recover damages on a § 1983 false arrest claim for an arrest that was supported by probable cause, even if the arresting officer lacked probable cause to arrest the plaintiff for the charge actually invoked.").

      B.      CVS Defendants:  State Action Requirement

The CVS Defendants argue they are entitled to summary judgment on plaintiff's Section 1983 false arrest and false imprisonment claims because the undisputed facts show they were not acting under color of state law during the events alleged in the FAC.

The Court agrees.

      1.      Legal Standard

To prevail on a Section 1983 claim, a plaintiff must demonstrate the defendant acted under color of state law. Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008).  The actions of a private individual may be attributable to the state if a plaintiff can establish one of the following:  (i) "the entity acts pursuant to the coercive power of the state or is controlled by the state"; (ii) "the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies"; or (iii) "the entity has been delegated a public function by the state." Id.

In analyzing whether a private party acted under color of state law, the Court looks to the specific conduct of which a plaintiff complains, rather than the party's general characteristics. See Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012).

      2.      Analysis

Liberally construed, the FAC asserts the CVS Defendants falsely reported to the police that plaintiff had stolen from the Mamaroneck Avenue store.  This unsupported allegation is insufficient to raise a triable issue of fact as to the CVS Defendants' liability.

12

It is well-established a private party does not become a state actor merely by seeking police assistance. Ginsberg v. Healy Car & Truck Leasing, Inc., 189 F.3d 268, 272 (2d Cir. 1999). An individual supplying information to law enforcement, even if the information is false or inaccurate, "does not become a state actor unless the police officers were improperly influenced or controlled by the private party." Stewart v. Victoria's Secret Stores, LLC, 851 F. Supp. 2d 442, 446 (E.D.N.Y. 2012) (collecting cases).

Here, the record demonstrates the officers investigated the facts and exercised independent judgment before arresting plaintiff for the alleged CVS larceny. According to Officer Horgan's case report, Coronado reported an alleged theft shortly after officers saw plaintiff exiting the CVS. The officers inquired about the suspect's description and Coronado visually identified plaintiff as the shoplifter. The officers also obtained video footage of the incident and Coronado's sworn statement. These undisputed facts are sufficient to establish the officers were not unduly influenced or controlled by the CVS Defendants. See Fletcher v. Walmart Stores, Inc., 2006 WL 2521187, at *3 (S.D.N.Y. Aug. 28, 2006). Thus, even assuming Coronado did falsely accuse plaintiff of theft, the state action requirement still would not be met. See Kash v. Honey, 38 F. App'x 73, 75–76 (2d Cir. 2002) (summary order).

Accordingly, plaintiff's Section 1983 claims for false arrest and false imprisonment against the CVS Defendants fail as a matter of law.

### C. City of White Plains: Monell Claim

The White Plains Defendants argue plaintiff cannot sustain a Section 1983 claim against the City of White Plains because he has not demonstrated the existence of an unconstitutional municipal policy, practice, or custom, pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978) ("Monell").

The Court agrees.

Under Monell, a municipality may be liable for a violation of Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." Monell v. Dep't of Soc. Servs., 436 U.S. at 694. Thus, to prevail in a Section 1983 claim against the City of White Plains, plaintiff must demonstrate both that he was injured by a municipal policy and that there is a direct causal connection between the policy and the deprivation of his constitutional rights. Jones ex rel. Jones v. Town of East Haven, 691 F.3d 72, 80–81 (2d Cir. 2012).

Plaintiff has proffered no facts or supporting evidence suggesting he was injured by a White Plains policy, official or unofficial. And "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1988). Moreover, because plaintiff's Fourth Amendment claims for false arrest and false imprisonment fail as a matter of law, they may not form the basis of a Monell claim. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).

Accordingly, plaintiff has raised no triable issue of fact as to the City of White Plains's liability under Monell.

III.    Section 1983 Failure to Intervene Claim

The White Plains Defendants argue plaintiff's Section 1983 failure to intervene claim must be dismissed because plaintiff has not shown his constitutional rights were violated.

The Court agrees.

14

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). However, a failure to intervene claim is dependent on the existence of an underlying constitutional violation. Matthews v. City of New York, 889 F. Supp. 2d 418, 434–44 (E.D.N.Y. 2012).

Plaintiff alleges the officers involved in the April 3 and April 13 arrests are liable for failure to intervene because they did not investigate the allegedly false accusations made by witnesses. However, as discussed above, the arrests were supported by probable cause, and plaintiff has offered no specific facts or evidence suggesting otherwise. In the absence of an underlying constitutional violation, plaintiff cannot demonstrate the officers had a duty to intervene. See Roper v. City of New York, 2017 WL 2483813, at *5 (S.D.N.Y. June 7, 2017). Accordingly, plaintiff's failure to intervene claim fails as a matter of law.

IV. State Law Claims

Liberally construed, the FAC asserts claims of false imprisonment and false arrest under state tort law. The Court addresses such claims as against each group of defendants in turn.

A. Officer Defendants

As discussed above, Section 1983 borrows from state law for claims of false arrest or false imprisonment. Thus, under New York law and Section 1983, probable cause is a complete defense to a claim of false arrest or false imprisonment when the arrest is made by a police officer. Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010). Accordingly, plaintiff's state-law false arrest and false imprisonment claims against the Officer Defendants fail because, as discussed above, the arrests at issue were supported by probable cause.

15

B.  CVS Defendants

Unlike law enforcement officials, private parties may not rely on probable cause as a defense to a false arrest or false imprisonment claim under New York law. Biswas v. City of New York, 973 F. Supp. 2d 504, 515 (S.D.N.Y. 2013) (citing White v. Albany Med. Ctr. Hosp., 151 A.D.2d (3d Dep't 1989)). Moreover, unlike Section 1983 claims, there is no state action requirement for a false arrest or false imprisonment claim brought against a private entity under New York law. Nevertheless, plaintiff's state-law false arrest and false imprisonment claims against the CVS Defendants fail because nothing in the record or the FAC suggests the CVS Defendants intended to or did in fact confine plaintiff at any point during the April 13 incident. See Coward v. Town and Village of Harrison, 665 F. Supp. 2d 281, 300 n.12 (S.D.N.Y. 2009).

Accordingly, the CVS Defendants are entitled to summary judgment on plaintiff's state-law false arrest and false imprisonment claims.

C.  City of White Plains

To the extent plaintiff intended to assert a state-law respondeat superior claim against the City of White Plains for false arrest or false imprisonment, such claim fails as a matter of law. Municipalities may be liable, under the doctrine of respondeat superior, for common law torts committed by their employees. Biswas v. City of New York, 973 F. Supp. 2d at 539. However, plaintiff cannot assert a respondeat superior claim against the City of White Plains because he has not demonstrated the Officer Defendants are liable for an underlying tort of false arrest or false imprisonment. Morales v. City of New York, 59 F. Supp. 3d 573, 583 (S.D.N.Y. 2014).

Accordingly, to the extent plaintiff intended to assert a state-law claim under respondeat superior, the City of White Plains is entitled to summary judgment.

V.  Cross-claims

The CVS Defendants and the White Plains Defendants have asserted cross-claims against one another for indemnification and contribution in the event either group is found liable to plaintiff for damages. Because the Court concludes defendants are entitled to summary judgment on all of plaintiff's claims, the cross-claims are moot and must be dismissed. See Perkins v. Am. Transit Ins. Co., 2013 WL 174426, at *21 (S.D.N.Y. Jan. 15, 2013).

## CONCLUSION

Defendants' motions for summary judgment are GRANTED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. Cf. Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motions (Docs. ##113, 116, 118, 119) and close this case.

Chambers will mail a copy of this Opinion and Order and all unpublished decisions cited herein to plaintiff at the address on the docket.

Dated: August 26, 2024
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

17